IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>MICHAEL HUBBARD | Criminal Action No.<br><br>1:19-CR-179-MLB-JSA |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S POST-HEARING BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

The United States of America, by Byung J. Pak, United States Attorney, and Leanne M. Marek, Assistant United States Attorney for the Northern District of Georgia, files this Response in Opposition to Defendant's Post-Hearing Brief in Support of Motion to Suppress Evidence. The officers had reasonable suspicion of criminal activity to ask Hubbard to exit his vehicle, therefore the Motion to Suppress Evidence should be denied.

**I.     Procedural History**

On May 7, 2019, a grand jury sitting in the Northern District of Georgia returned an Indictment charging Hubbard with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). On October 1, 2019, the grand jury returned a Superseding Indictment containing the same charges. (Doc. 17). Hubbard filed the instant Motion to Suppress on

January 29, 2020.  (Doc. 33).  This Court held a suppression hearing on the Motion on June 5, 2020.

## II.     Statement of Facts

On June 18, 2018, at approximately 4:20 a.m., Atlanta Police Officer Mogavero received a call from the Atlanta Police Department dispatch regarding a person down and possibly intoxicated at a BP Gas Station. (June 5, 2020, Suppression Hearing Transcript [Tr.] at 4:3-23).  The subject of the person down, possibly intoxicated call was later identified as the Defendant, Michael Hubbard.  (Tr. at 4:9-11).  Officer Mogavero arrived at the BP gas station shortly after receiving the dispatch call and saw a vehicle parked improperly in the gas station parking lot. (*Id*. at 7:2-21). The vehicle's engine was running.  (*Id*. at 7:22-25).  Officer Mogavero approached the driver's side of the vehicle and discovered that Hubbard was asleep inside the vehicle.  (*Id*. at 7:7-9).  Hubbard did not wake up when Officer Mogavero shined a flashlight into the vehicle.  (*Id*. at 10:11-13). While looking into the vehicle, Officer Mogavero saw a firearm on the passenger seat.  (*Id*. at 7:10-12).  He also noticed a clear plastic cup that contained liquid and a lime inside the vehicle.  (*Id*. at 10:3-5).  The vehicle's tires were damaged and it was parked halfway between a parking spot and the exit to the gas station parking lot.  (*Id*. at 7:14-19; 9:3-22).

After observing the firearm inside the vehicle, Officer Mogavero asked that another police officer be dispatched to the scene to assist him.  (*Id*. at 10:19-22).

APD Officer Elizabeth Miller arrived shortly thereafter. (*Id*. at 10:23-11:1). Officer Mogavero told Officer Miller about the firearm inside the vehicle and the two decided that Officer Mogavero would approach the driver's side vehicle and Officer Miller would go to the passenger's side. (*Id*. at 11:9-16). Officer Mogavero tapped on the window of the vehicle with his flashlight and announced that he was with the Atlanta Police Department. (*Id*. at 11:25-12:3). Both officers announced that they were with the Atlanta Police Department and instructed Hubbard to "open up." (Officer Mogavero Body Camera Recording, Government's Exhibit 1, at 6:38-6:44). Hubbard woke up, opened the driver's side door, and began to exit the vehicle. (Tr. at 12:2-5). When the door opened, Officer Mogavero smelled alcohol from inside the vehicle. (*Id*. at 13:8-12). Hubbard then sat back in the driver's seat and reached for the firearm that was on the passenger's seat. (*Id*. at 12:6-8). As he was reaching towards the firearm, Officer Miller yelled "don't touch it" and Officer Mogavero instructed "don't do it." (Ex. 1 at 6:53-7:03). Hubbard released his hand from the weapon at that time and Officer Mogavero was able to get him out of the car and place him into custody. (Tr. at 12:9-23).

Officer Mogavero testified that he made the decision to wake Hubbard up and have him exit the vehicle because he was checking on his wellbeing and also investigating a potential DUI or hit and run accident. (*Id*. at 11:17-24).

### III. Argument and Citation to Authority

"The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). The "touchstone" of Fourth Amendment analysis "is always the reasonableness of all the circumstances of the particular governmental invasion of a citizen's personal security, and that reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Maryland v. Wilson*, 519 U.S. 408, 411 (1997) (citations and quotations omitted). The Eleventh Circuit set out three categories of police-citizen encounters, to which different levels of Fourth Amendment scrutiny attach: "(1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny; (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied; and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny." *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003) (internal citations omitted); see also *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011) (same). Here, because Hubbard was asleep and the officers saw he was in possession of a firearm, they did not have the opportunity to engage in a consensual and routine police interaction with him due to officer safety concerns. The Government agrees with the Defendant that he was seized for Fourth Amendment purposes at the time of the encounter.

### A. The Officers Had Reasonable Suspicion of Criminal Activity

"[T]he Fourth Amendment does not prohibit a police officer, 'in appropriate circumstances and in an appropriate manner [from] approach[ing] a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'" *Jordan*, 635 F.3d at 1186 (11th Cir. 2011) (*citing Terry v. Ohio*, 88 S.Ct. 1868, 1872, 392 U.S. 1, 22 (1968)).  A law enforcement officer may seize an individual for purposes of a *Terry* stop when "(1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." (*Id.*) (internal quotations omitted).  Reasonable suspicion "is significantly less onerous than a showing of probable cause to arrest." *United States v. Dunn*, 345 F.3d 1285, 1289 (11th Cir. 2003).  Reasonable suspicion "is based on the totality of the circumstances, and it does not require officers to catch the suspect in a crime." *United States v. Harris*, 526 F.3d 1334, 1337-1338.  (11th Cir. 2008).  Instead, a reasonable suspicion of criminal activity may be formed by observing exclusively legal activity.  *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir.2004).  "Additionally, the issue is not whether the particular officer involved actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify the investigatory stop." *Harris*, 526 F.3d at 1338.  (11th Cir. 2008) (internal citation omitted).

Officer Mogavero had reasonable suspicion that Hubbard had driven his vehicle while intoxicated.  Asking Hubbard to exit the vehicle was warranted based on that reasonable suspicion.  Once Hubbard reached for his firearm, the focus of the encounter changed, however the relevant inquiry for the motion to suppress evidence is the existence of reasonable suspicion at the time of the initial encounter.  The evidence at the suppression hearing established the following facts that demonstrate that Officer Mogavero had reasonable suspicion of criminal activity to ask Hubbard to open his vehicle door:

- Officer Mogavero responded to a person down, possibly intoxicated 911 call. (Tr. at 4:3-23).
- The call came in very early in the morning, around 4:20 a.m. (*Id.*)
- Hubbard's vehicle was parked improperly in the gas station's parking lot, partially obstructing the thoroughfare of the gas station. (*Id.* at 7:2-21; Government's Exhibits 2-4).
- The tires on the vehicle were damaged. (*Id.* at 7:14-19; 9:3-22).
- Hubbard was passed out or asleep in the driver's seat of the vehicle and he did not wake up when Officer Mogavero shined a flashlight through each of the vehicle's windows. (*Id.* at 7:7-9; 10:3-5).
- A firearm was on the passenger's seat of the vehicle.  (*Id.* at 7:10-12).
- The vehicle's lights were turned on and the engine was running. (*Id.* at 7:22-25).

- There was a clear plastic cup containing liquid and a lime in the vehicle. (Id. at 10:3-5).

Based on the totality of the circumstances, Officer Mogavero had reasonable suspicion that Hubbard had driven his vehicle while intoxicated. Georgia law provides that "a person shall not drive or be in actual physical control of any moving vehicle while under the influence of alcohol to the extent that it is less safe for the person to drive." O.C.G.A. § 40-6-391(a)(1). Sufficient probable cause, a higher standard that reasonable suspicion, to conduct a DUI arrest under O.C.G.A. § 40-6-391(a)(2) only requires that an officer have knowledge that a suspect was actually in physical control of a moving vehicle while under the influence of alcohol to a degree which renders him incapable of driving safely. *Brown v. State*, 302 Ga. App. 272, 274 (Ga. App. Ct. 2010). An officer does not have to witness the suspect driving the vehicle, observing "circumstances from which a jury could infer that [the suspect] was in actual physical control of the car when it was moved to the location where the officer found it, and that [the suspect] was intoxicated while moving it there is sufficient. *Johnson v. State*, 391 S.E.2d 132, 134 (Ga. App. Ct. 1990) (affirming DUI conviction where officer found the defendant behind the wheel of a parked vehicle in a business's parking lot at 2:00 a.m. with glassy eyes and an odor of alcohol on his person.).

Here, Officer Mogavero observed Hubbard asleep in the driver's seat of his vehicle with the lights on and the engine running at 4:30 in the morning. He saw that Hubbard did not wake up when he shined a flashlight in his face. He

observed that Hubbard's vehicle was not parked properly in a parking space and that its tires were damaged. He also noticed a clear plastic cup that contained liquid and a lime in the vehicle. Considering those facts together, Officer Mogavero had reasonable suspicion that Hubbard had committed a DUI before asking him to step out of his vehicle.[1] *See United States v. Dickson*, 849 F.3d 686, 690 (7th Cir. 2017) (affirming the district court's denial of defendant's motion to suppress evidence where officer had reasonable suspicion to order the defendant out of his vehicle for possibly driving drunk after observing him asleep in his vehicle in a McDonald's drive-thru with a bottle of vodka in the center console); *United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006) (holding that officers had reasonable suspicion that the defendant had or soon would be driving intoxicated after finding him asleep while "slumped over" his steering wheel

---

[1] The Defendant argues that Officer Mogavero did not see the cup containing liquid and a lime until after Hubbard exited the vehicle. Officer Mogavero testified repeatedly that he saw the cup in the center console of the vehicle at the same time that he saw the firearm, prior to waking up Hubbard. (Tr. at 7:13-14; 10:1-5; 31:2-12; 34:18-35:7). The Defendant attempts to dispute this testimony because Officer Mogavero did not mention seeing the cup to Officer Miller or mention it in the initial paragraphs of his police report and instead only mentioned the firearm at that time. When Officer Mogavero describes retrieving the cup from the vehicle in his police report, he does not say it is the first time he noticed the cup. His testimony on the issue was clear and consistent and there is no reason to dispute his truthfulness or memory. Regardless, there are sufficient facts to find that Officer Mogavero had reasonable suspicion of criminal activity to conduct a *Terry* encounter even without considering the plastic cup with liquid and a lime inside of it

with the engine running at 11:40 p.m.); *Pierce v. State*, 738 S.E.2d 307, 310 (Ga. Ct. App. 2013) (finding that an officer had reasonable suspicion to detain the defendant after finding her asleep behind the wheel of a vehicle with the engine running and unresponsive when the officer initially shined his flashlight inside her vehicle).

Officer Mogavero had reasonable suspicion that Hubbard had driven the vehicle while intoxicated and he also knew Hubbard was armed with a firearm. Asking Hubbard to exit his vehicle to further investigate the criminal activity, and to protect himself and the other officer on the scene was a permissible *Terry* encounter.

### B. The Officers Had Probable Cause to Arrest Hubbard

In addition to having reasonable suspicion that Hubbard had operated a vehicle while intoxicated, the officers also had probable cause to arrest Hubbard once he opened the door to his vehicle and the officer's noticed a strong smell of alcohol. Taking into consideration all of the facts mentioned above and that Officer Mogavero testified that he got a "strong smell of alcohol" once Hubbard opened the door of the vehicle, there was probable cause that Hubbard had committed a DUI, in violation of Georgia law. *See Brown v. State*, 302 Ga. App. 272, 274 (Ga. App. Ct. 2010). The Defendant argues in his motion that Officer Mogavero was "carefully coached" after the incident regarding probable cause. (Def. Br. at 9). Officer Mogavero testified that he did not remember these

conversations with the lieutenant on the scene, but a review of the body camera video shows that the officers are discussing what potential criminal charges to attempt to bring after the incident and also the details to include in a report. It is clear that there was probable cause to arrest Hubbard for a number of criminal violations, including DUI.

## Conclusion

Based on the foregoing reasons, the government respectfully requests that the Court deny Hubbard's Motion to Suppress Evidence.

Respectfully submitted,

BYUNG J. PAK
 *United States Attorney*

/s/LEANNE M. MAREK
 *Assistant United States Attorney*
Georgia Bar No. 270935
Leanne.marek@usdoj.gov

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Lawanda Hodges

July 21, 2020

/s/ LEANNE M. MAREK

LEANNE M. MAREK

*Assistant United States Attorney*