IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § CASE NO. 1:19-CR-179-MLB-JSA |
| | § |
| v. | § |
| | § |
| MICHAEL HUBBARD, | § |
| | § |
| Defendant/Movant. | § |

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S POST-HEARING BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

COMES NOW, MICHAEL HUBBARD, Defendant/Movant herein, by and through the undersigned counsel, and files this, his Reply to Government's Response in Opposition to Defendant's Post-Hearing Brief in Support of Motion to Suppress Evidence, pursuant to the Court's direction during the evidentiary hearing in this matter held on June 5, 2020.

### I. ARGUMENT AND CITATION OF AUTHORITIES

In its Response, the Government deflects from the issue of the illegal seizure and removal of Hubbard from his vehicle by mentioning facts only learned by police after-the-fact that lead to the non-contested arrest. But the end does not justify the means in a Fourth Amendment analysis.

1

### A. The focus must remain on the information available to the officers at the time of the stop.

It is well-settled law that the reasonable suspicion inquiry focuses on the information available to the officers at the time of the stop (i.e., when the officers forcibly ordered Hubbard to exit his vehicle) not information that the officers discovered only later. *See e.g.*, *United States v. Lewis*, 674 F. 3d 1298, 1305 (11th Cir. 2012) (in its reasonable suspicion calculus, the district court erroneously relied on the officers' knowledge gained only after the detention); *United States v. Smith*, 201 F.3d 1317, 1323 (11th Cir. 2000) ("In deciding whether the detaining officers had reasonable suspicion, we look at the totality of the circumstances known to the detaining officers *at the time of the detention*.") (emphasis added); *United States v. Cruz*, 909 F.2d 422, 424 (11th Cir. 1989) ("To determine whether a stop is reasonable, we look at the totality of the circumstances as they existed *at the time of the stop*.") (emphasis added).

Accordingly, that Officer Mogavero allegedly smelled alcohol once the car door opened or that Hubbard allegedly extended his arm towards the firearm on the passenger seat[1] (Transcript, pp. 12-13), are facts that may not be used to justify Hubbard's initial seizure.

---

[1] Notably, Hubbard is not being charged with these offenses, federally or at the state

2

B. **There was no reasonable suspicion of criminal activity.**

In *Terry v. Ohio*, the Supreme Court adopted "a dual inquiry for evaluating the reasonableness of an investigative stop." *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573 (1985) (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879 (1968)); see also *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). Under *Terry*'s two-part inquiry, the court first examines, "whether the officer's action was justified at its inception," *Powell*, 222 F.3d at 917 (quoting *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879), which turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime, *id*. In the second part of the inquiry, determining whether the stop went too far and matured into arrest before there was probable cause, the court considers "whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. (quoting *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879).

While it is true that a reasonable suspicion of criminal activity may be formed by observing exclusively legal activity as the Government argues, *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004), the lawful conduct must nonetheless be suggestive of criminal activity. *Illinois v. Wardlow*, 528 US 119, 125, 120 S.Ct.

---

level.

3

673, 675-76 (2000); *Terry v. Ohio*, 392 US 1, 22-23, 88 S.Ct. 1868 (1968). Sleeping in a disabled vehicle with the engine running in June in Atlanta is not only lawful activity, it gives rise to no reasonable suspicion of criminal activity. In fact, it reasonably could have been the case that Hubbard, while waiting for assistance, decided to activate his vehicle to use its air conditioning on a June, Atlanta evening.

In its Response, the Government claims that Hubbard did not wake up when Officer Mogavero "shined a flashlight in his face." Government's Response, p. 7. But the testimony and body cam video show that Officer Mogavero only shined a flashlight "through" or "into" the interior of the vehicle, not directly into Hubbard's face to awaken him. Transcript, pp. 7, 10; (2:30-2:55). In fact, because of the presence of the firearm, Officer Mogavero intentionally made no effort to wake Hubbard up until after backup arrived. Transcript, p. 21. At that point, Hubbard awakened quickly to the taps on the window and verbal commands which gave rise to no indication of intoxication and was entirely consistent with someone who was merely asleep. (6:36-6:42).

### C. **There was no reasonable suspicion of DUI, specifically, and not a single case cited by the Government supports otherwise**.

In support of a reasonable suspicion specifically for DUI, the Government also cites to several supposedly similar DUI cases; however, each is distinguishable by the presence of articulable facts of intoxication not found in the instant case. For

4

example, in *Brown* the defendant was already stopped in his vehicle by police for a loud music violation when the officer smelled alcohol coming from Brown's person and observed that his eyes were bloodshot and glassy giving rise to a reasonable inference of intoxication. *Brown v. State*, 302 Ga. App. 272, 274 (Ga. App. Ct. 2010). Likewise, in *Johnson*, the officer noticed that the driver "had glassy eyes and an odor of alcoholic beverage about his person." *Johnson v. State*, 391 S.E.2d 132, 134 (Ga. App. Ct. 1990). No such observations were made in the instant case because officers forcibly removed Hubbard from the vehicle prior to talking to him and investigating the situation.

Next, *Dickson* is inapposite because in that case that court noted that Dickson conceded a reasonable suspicion existed for a DUI investigation, but "peculiarly" challenged only the officer yelling and shaking Dickson for thirty seconds to wake him up. *United States v. Dickson*, 849 F.3d 686, 690 (7th Cir. 2017). In contrast, Hubbard *does* challenge the existence of a reasonable suspicion for DUI, specifically as to the element of intoxication, and there is no unique issue of whether "shaking" someone constitutes a seizure because Hubbard awoke quickly to the verbal announcement and tapping. Finally, there was a visible bottle of vodka in Dickson's

car, whereas the cup with a lime in Hubbard's car was not noticed until after Hubbard was already forcibly removed.[2]  Transcript, pp. 15, 17-20, 33.

In *Broadie*, when the sleeping driver finally awakened after 15 to 20 taps on his window, "he was 'disoriented,' looked 'confused' and, in the officer's opinion, 'could have been under the influence' of alcohol or drugs." *United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006).  It was only after making these observations that police directed Broadie to exit the vehicle.  *Id*.  In contrast, once Hubbard awakened to the taps on his window he was immediately ordered out of the vehicle without police having time to ascertain whether he was disoriented or confused.  Transcript, pp. 11-12; (6:10-6:50).

---

[2] Officer Mogavero's written report speaks for itself regarding the timing of the discovery of the plastic cup:

> I put the man into the back seat and asked him if he had any I.D. on him.  At that moment the man told me that it was in the car.  I then proceeded to look in the car where I *found* a 10 ounce plastic cup that had a clean liquid and two limes on it.

Transcript, pp. 33.  (emphasis added).  The report does not say that he merely "retrieved" or "recovered" the cup at that time as argued by the Government, but that he actually "found" it during the subsequent search of the vehicle for Hubbard's I.D.  To the extent there is ambiguity in the evidence on this issue, the Government has failed to carry its burden of proof.  *U.S. v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002) (citing *U.S. v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95 (1951)).

Finally, in *Pierce*, the officer knocked on the window and asked the sleeping driver to roll it down. *Pierce v. State*, 738 S.E.2d 307, 310 (Ga. Ct.App. 2013). In response, Pierce rolled down her window, "whereupon the officer detected an order of alcohol and noticed that Pierce had glassy eyes." *Id*. It was only then that the officer asked Pierce to step out of the vehicle. *Id*.

All of the DUI cases cited by the Government glaringly illustrate how police in the present case prematurely escalated their contact with a sleeping driver before having sufficient facts. They may have responded to a "person down, possibly intoxicated" call, but did nothing to confirm the tip specifically as to intoxication. The mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a *Terry* stop without meeting the reliability requirement. *Florida v. JL*, 529 US 266, 276 (2000). Instead of talking to Hubbard through the window whereby they might have observed indicia of intoxication, the police ordered Hubbard out of the vehicle prior to detecting any odor or evidence of alcohol. Hubbard, whose car could not move because of flat tires, was asleep (but quickly awakened when verbally commanded to do so) and had his car running on a June evening in Atlanta, is now facing a 15-year sentence as an armed career criminal as a result of the unlawful police conduct. Rather than supporting the

Government's position, the cited DUI cases actually establish that suppression is required in the present case.

## II. CONCLUSION

WHEREFORE, for the reasons set forth herein and in Defendant's Motion to Suppress Evidence, Defendant Michael Hubbard, respectfully requests that this honorable Court grant his Motion to Suppress Evidence.

Respectfully submitted, this 30th day of July, 2020.

><u>/s/Lawanda N. Hodges</u>
>Lawanda N. Hodges
>Georgia Bar No. 547413
>The Law Firm of Lawanda Hodges, LLC
>1100 Peachtree Street, Suite 200
>Atlanta, GA 30309
>(404) 474-0772
>lhodges@lhodgeslaw.com
>
>*Attorney for Michael Hubbard*

## CERTIFICATION

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Civil Rule 5.1B.

>**/s/Lawanda N. Hodges**
>Lawanda N. Hodges
>Georgia Bar No. 547413

The Law Firm of Lawanda Hodges, LLC
1100 Peachtree Street, Suite 200
Atlanta, GA 30309
(404) 474-0772
lhodges@lhodgeslaw.com

*Attorney for Michael Hubbard*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 30th day of July, 2020, the undersigned electronically filed the foregoing filing using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record: