IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| |
| v. | \| CRIMINAL CASE NO.: |
| MICHAEL HUBBARD, | \| 1:19-CR-179-MLB-JSA |
| Defendant. | \| |

## REPORT AND RECOMMENDATION

Atlanta Police Department officers received a call about a person down and possibly intoxicated in the parking lot of a BP Gas Station at 4:20 am on June 18, 2018. The responding officer saw Defendant sleeping behind the wheel of an idling car, stopped in the middle of a non-parking area of the lot, with a handgun sitting openly within reach. Upon a brief investigative seizure, the officers determined that Defendant was a previously-convicted felon in possession of a firearm, and arrested him. Defendant now moves to suppress, alleging that the officers lacked any grounds to seize him and investigate the circumstances of his possession of the gun. Because the facts adduced at the evidentiary hearing show a valid investigative seizure, however, the Court **RECOMMENDS** that the Motion to Suppress be **DENIED**.

I.     FACTS

The Court held an evidentiary hearing on June 5, 2020 [46], at which the Government called Atlanta Police Officer Joseph Mogavero, and the Defendant called former Atlanta Police Officer Elizabeth Miller.

Officer Mogavero testified that he received a call at approximately 4:20 am on Monday, June 18, 2018, to respond to a person down and possibly intoxicated at a BP Gas Station near Hill Street and Memorial Drive in Atlanta.  (Transcript of Suppression Hearing [47] ("Tr.") at 4).  When Officer Mogavero arrived, he saw the Defendant asleep behind the wheel of a car that was stopped "pretty much halfway between a parking spot and the exit to the gas station parking lot." *Id*. at 7.  Officer Mogavero shined his flashlight in the car and saw a handgun sitting on the passenger seat.  *Id*.  Officer Mogavero also testified that he saw a glass drink with liquid in it and a lime, and that at least some of the tires were extremely damaged.  *Id*.  The Defendant was not responsive when Officer Mogavero shined his flashlight into the car.  *Id*. at 10.  Because of the presence of a firearm, Officer Mogavero called for backup, and Officer Miller thereafter arrived.  *Id*. at 10-11.  According to Officer Mogavero, their focus was to investigate both the Defendant's well-being and also whether he was involved in criminal activity such as "DUI activity or a hit and run or anything of the sort."  *Id*.

Officer Mogavero tapped on the window two times and Defendant awoke. *Id*. at 12.  Both officers also yelled for Defendant to "open up."  Gov't Ex. 1 (bodycam recording, at 6).  Defendant initially began to open the door as instructed, at which point Officer Mogavero smelled alcohol from inside the vehicle.  *Id*. at 13.  Defendant appeared to then reach for the gun, at which point the officers yelled "don't touch it," and "don't do it."  Ex. 1 at 6-7.  Defendant released the gun, and the officers were able to get safely Defendant out of the car and into custody.  Tr. at 12.

## II.   DISCUSSION

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures.  U.S. CONST. AMEND. IV.  "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home [or other private property] without a warrant are presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000).  Upon a motion to suppress evidence garnered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution.  *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (*citing United States v. Impson*, 482 F.2d 197 (5th Cir. 1973)).  Thus, the government must demonstrate that the challenged action falls within one of the recognized exceptions to the

warrant requirement, thereby rendering it reasonable within the meaning of the Fourth Amendment. *Vale v. Louisiana*, 399 U.S. 30, 34 (1969); *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Friere*, *supra*.

Police may also detain a suspect briefly for an "investigative stop" if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). "Reasonable suspicion" requires a lesser quantum of factual support and certainty than does probable cause. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion must, however, be more than just an "inchoate and unparticularized suspicion or hunch." *Id*., 392 U.S. at 27. The officer must have "some minimal level of objective justification" taken from the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). What is a "reasonable suspicion" is determined from the totality of the circumstances, *United States v. Sokolow*, 490 U.S. 1 (1989), including the collective knowledge of the officers involved. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998). The "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

Moreover, an officer legitimately encountering an individual for any other purpose, such as for a wellness check, may conduct a frisk or take similar limited

protective action if the officer reasonably believes himself to be in danger. *See United States v. Alexander*, 2018 WL 323945, *1 (S.D. Ga. January 8, 2018) (officer legitimately checking on the wellness of a driver who was acting unusually, was entitled to initially order the man to place his hands on the dash when the officer saw a handgun within reach within the car); *see also United States v. Bonds*, 829 F.2d 1072, 1074 (11th Cir. 1987) ("[W]hen an officer legitimately encounters an individual, whether he is investigating that individual or not, the officer may reasonably believe himself to be in danger and may wish to determine quickly whether that person is armed."); *Cf. generally Ybarra v. Illinois,* 444 U.S. 85, 92-93 (1979) (police were not entitled to frisk a person simply present at a commercial establishment being searched, without "a reasonable belief that he was presently armed and dangerous.").

In this case, having seen the gun in plain view, the officers were entitled to take the minimally protective step of ordering Defendant out of the car, while they investigated his wellness and/or the suspicious circumstances by which he was asleep behind the wheel of a running car in a clearly inappropriate spot at 4:00 am. This case is similar to *Alexander*, 2018 WL 323945, *1, in which officers conducted a wellness check on a driver after observing the car stopped at a stop sign for an unusual amount of time. *Id*. The officers saw a gun in the person's waistband, and immediately ordered the person to display his hands and place them

on the dashboard.  *Id*.  A sister district court in *Alexander* upheld this minimal seizure in the circumstances, despite the lack of facts suggesting that a crime was necessarily afoot.  *Id*.  The court, citing *Bonds*, discussed the legal distinction between an investigatory *Terry* stop and a mere protective frisk, which as noted above can be appropriate in other circumstances.

The undersigned finds similarly here.  Officer Mogavero was specifically called to the scene via a citizen complaint of a possible intoxicated person down.  By the time he arrived, in the wee hours of the morning, Defendant was still sleeping (or passed out) behind the wheel of a running car, in the middle of the BP gas station driving area, halfway between any actual parking spot and the exit.  These facts at a minimum suggest reasonable grounds for concern as to the well-being of the driver.  Even if there were no grounds to suspect criminal activity, Officer Mogavero in investigating Defendant's wellness, and having observed a firearm within reach, was entitled, as in *Alexander*, to take reasonable steps to protect his own safety.  This included the minimal step of ordering the Defendant to "open up" and even to come out of the car.

But whether these actions were justified based on a wellness check is ultimately beside the point.  The facts are sufficient to support these same actions on the basis of an investigatory *Terry* stop as well.  To be sure, Officer Mogavero acknowledged that sleeping in a car is not itself a criminal act.  But *Terry* does not

require that the police actually observe a crime in progress to engage in a minimal investigative seizure. What *Terry* and its substantial progeny require is that the officers hold a reasonable suspicion, based on specific and articulable facts, that a crime might be afoot. That standard was met here. While it is not a crime to sleep in a car, it is highly unusual to sleep in a running car stopped in the middle of the driving area of a gas station. And the officer specifically observed a firearm. While these facts did not definitively constitute a crime—and may not even have reached the level of probable cause—they were enough to generate reasonable suspicion that Defendant might have operated the car while drunk, or might be about to do so, or might have committed other violations. *See, e.g., United States v. Broadie*, 452 F.3d 875, 878-79 (D.C. Cir. 2006) (reasonable suspicion existed where suspect was asleep behind the wheel of a properly-parked, but idling, car, and was unresponsive to taps on the window, noting that while it may have been possible that the suspect was merely sleeping, "'Our inquiry … does not deal with hard certainties, but with probabilities.'") (*quoting United States v. Moore*, 394 F.3d 925, 930 (D.C. Cir. 2005) (other internal citations and quotations omitted).[1]

---

[1] Officer Mogavero also testified that he observed an open drink with a lime, and damaged tires, prior to forcing Defendant to open the door. These facts would even more strongly contribute to reasonable suspicion of DUI and/or a possible hit-and-run. Defendant, however, challenges Officer Mogavero's testimony as to these observations, and asserts based on the incident report and the bodycam footage that Officer Mogavero only observed these matters after forcing Defendant out of the car in the first place. The Court does not find it necessary to resolve

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Motion to Suppress [33] be **DENIED**.

This matter is **READY FOR TRIAL**.

It is so **RECOMMENDED** this 5th day of August, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

these factual disputes.  Even assuming that Officer Mogavero's testimony is incorrect as to when he noticed the drink and the tires, these observations are not necessary for reasonable suspicion and/or as a basis to conduct a wellness check.  It remains that Defendant was asleep, unresponsive to a flashlight, behind the wheel of a running car that was stopped seemingly in the middle of trying to drive out of the gas station lot, and with a handgun in open view.  These facts were sufficient.