**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § CASE NO. 1:19-CR-179-MLB-JSA |
| | § |
| v. | § |
| | § |
| MICHAEL HUBBARD, | § |
| | § |
| Defendant. | § |

**DEFENDANT HUBBARD'S OBJECTIONS TO
REPORT AND RECOMMENDATION**

COMES NOW, Michael Hubbard, Defendant in the above-captioned matter, by and through the undersigned counsel, and respectfully files these, his Objections to Report and Recommendation, and hereby objects to the United States Magistrate Judge's Report and Recommendation, Doc. # 54 (the "Report"), as follows:

**I. Objections to Recommendation that Defendant's Motion to Suppress Be Denied Based on a Wellness Check**

Mr. Hubbard objects to the Report's finding that in the context of conducting a "wellness check," officers were entitled to seize Hubbard by ordering him out of his vehicle at gunpoint for officer safety due to the visible firearm on the passenger seat.  *See* Doc. # 54, pp. 5-6.  For this conclusion, the Report relied upon *United States v. Alexander*, 2018 WL 323945, *1 (S.D. Ga. January 8, 2018), which found

1

it reasonable for officers to ask a defendant to place his hands on the dash of his vehicle during a "wellness check" when the defendant denied possessing a firearm that the officers could clearly see in his waistband.  This denial of the obvious existence of the firearm coupled with the encounter taking place late at night in a high crime area created a reasonable belief that the officers were in danger.  *Id*. *Alexander*, however, is distinguishable.

A.  This was not a de minimis seizure incident to a genuine wellness check.

First, asking an armed citizen to keep his hands in view by placing them on the dash of the vehicle during a wellness encounter with police is not at all similar to the type of seizure at issue in the present case.  It might have been reasonable had officers simply asked Hubbard to keep his hands in view, but those are not the facts of this case.  Instead, officers unreasonably and unnecessarily escalated the situation by forcing Hubbard out of his vehicle at gunpoint.  The officers' actions were not that of a de minimis seizure incident to a genuine wellness check of an armed citizen, but were on par with that of a high-risk felony vehicle stop and forcible extraction normally reserved for serious and violent felons.

B.  There were no facts indicating that Hubbard was "presently dangerous."

Second, officers took this extraordinary step for officer safety because of the visible firearm on the passenger seat, but without any facts indicating the officers

2

were in danger.  In *Alexander*, the defendant denying possession of the clearly visible firearm in a high crime area made the possession most likely unlawful, thus presenting a danger to the officers.  But when officers seized Hubbard, they had no facts indicating possession of the firearm was anything but lawful and non-threatening.  His arm movement towards the firearm only occurred *after* he had already been seized by officers.  The case law pertaining to frisks has always required not just a reasonable belief that the subject is armed, but that he is also "presently dangerous."  *United States v. Bonds*, 829 F.2d 1072, 1074 (11th Cir. 1987) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 92-93, 100 S.Ct. 338 (1979)); see also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968) ("there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an *armed and dangerous* individual")(emphasis added).  The facts of this case did not reasonably justify a forcible seizure and removal of Hubbard's person from the vehicle simply due to the presence of a firearm during a routine wellness check absent additional facts to show the officers were in danger from that firearm or that Hubbard presented some risk of violence.

C.  Search (*Alexander*) versus a Seizure (Hubbard)

Third, there was no frisk in the present case, which is the analysis of the Court in *Alexander*, *supra*.  Hubbard is not alleging an unlawful *search* or frisk, but an unlawful *seizure* of his person.  The Report inappropriately used the legal standard for a frisk search to justify a warrantless seizure, which has a separate and distinct rationale and standard as clearly explained by the 11th Circuit Court in the very case law relied upon by *Alexander*:

> The distinction focused on here between a stop and a frisk is, however, more than mere semantics. Common sense teaches that the two activities, while frequently occurring in conjunction, are actually separate activities which serve distinct purposes and require distinct justifications. . . . In sum, a stop serves to investigate crime, while a frisk serves to prevent injury.  Because these two police methods serve different purposes, it is logical that the standards by which the legitimacy of the two operations is measured also differ.

*United States v. Bonds*, 829 F.2d 1072, 1074 (11th Cir. 1987).  Hubbard objects to the Report's use of the legal standard for a frisk to resolve his claim of an illegal seizure.

To the extent the officers were performing a wellness check in the present case, the issue is not whether a frisk was justified, but whether seizing Hubbard and removing him from his vehicle at gunpoint was justified based on facts known to officers at that time.  In *Simmons*, the 11th Circuit Court described a wellness check or "community caretaking function" in regard to a motorist as being a "consensual

4

encounter" involving no coercion or detention.  *United States v. Simmons*, No. 18-13631 (11th Cir. April 10, 2019) (unpublished).  During the consensual encounter in that case, the Court held that "the minimally intrusive detention of Simmons in his own car" by directing him to keep his hands on the steering wheel and not move, was reasonably justified by Simmons's failure to produce identification, refusal to communicate with police, and hidden furtive hand movements with evidence of a possible knife or gun present.  *Id*.  The instant case does not involve a minor limitation on Hubbard's placement of his hands within his own vehicle during a consensual wellness check.  Rather, officers began their encounter with Hubbard by seizing his person and ordering him out of the car without first talking to him or observing any of the facts of danger or violence present in *Simmons* beyond mere possession of an apparently lawful firearm.  The officers' actions cannot be justified based on a lawful wellness check.

## II. Objections to Recommendation that Defendant's Motion to Suppress Be Denied Based on an Investigatory *Terry* Stop

Mr. Hubbard also objects to the Report's finding that regardless of whether the officers' actions are justified based on a wellness check, the facts are sufficient to support these same actions on the basis of an investigatory *Terry* stop, as well. *See* Doc. # 54, pp. 6-7; *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879 (1968). Although Officer Mogavero specifically stated that he was there to check on

Hubbard's well-being (transcript, p. 25) and only felt Hubbard was DUI once the car door opened and he could smell alcohol (*id*. at p. 24), the Report articulates a suspicion that the officer did not have.  Specifically, the Report states that sleeping in a running car stopped in the middle of the driving area of a gas station with a visible firearm constitute a "reasonable suspicion that Defendant might have operated the car while drunk, or might be about to do so, or might have committed other violations."  Doc. # 54, p. 7.  Hubbard objects to this conclusion and maintains that such facts would only give rise to a consensual wellness check.  Without some evidence of alcohol or intoxication, there is no inference of a DUI or any other criminal activity.[1]

The Report's reliance upon *Broadie* illustrates this very point.  In *Broadie*, when the sleeping driver finally awakened after 15 to 20 taps on his window, "he was 'disoriented,' looked 'confused' and, in the officer's opinion, 'could have been under the influence' of alcohol or drugs."  *United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006).  It was only after making these observations that police directed Broadie to exit the vehicle.  *Id*.  In contrast, when Hubbard quickly awakened to the two taps on his window he was immediately ordered out of the

---

[1] The Report specifically declined to resolve factual disputes regarding a drink with a lime and damaged tires finding that such observations were not necessary for reasonable suspicion.  See Doc. # 54, fn 1, pp. 7-8.

vehicle without police first ascertaining whether he was disoriented or confused or exhibited any other sign of intoxication.  Indeed, all of the factually similar cases of sleeping motorists relied upon by the Government in its briefing of this issue are distinguished by the presence of articulable facts of intoxication not found in the instant case.  *See e.g.*, *Brown v. State*, 302 Ga. App. 272, 274 (Ga. App. Ct. 2010) (smell of alcohol, bloodshot and glassy eyes); *Johnson v. State*, 391 S.E.2d 132, 134 (Ga. App. Ct. 1990) (glassy eyes and odor of alcoholic beverage); *Pierce v. State*, 738 S.E.2d 307, 310 (Ga. Ct.App. 2013) (odor of alcohol and glassy eyes).

Under *Terry*'s two-part inquiry,  the court first examines, "whether the officer's action was justified at its inception," *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quoting *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879), which turns on whether the officers had a reasonable suspicion that the defendant had engaged, or was about to engage, in a crime, *id*.  In the second part of the inquiry, determining whether the stop went too far and matured into arrest before there was probable cause, the court considers "whether [the stop] was reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. (quoting *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879).

In the instant case, police may have responded to a "person down, possibly intoxicated" call, but did nothing to confirm the tip specifically as to intoxication.

Without some evidence of alcohol being involved, there was no reasonable suspicion of a DUI or other criminal activity. Forcible extraction of Hubbard from his vehicle went too far and was not reasonably related in scope to the circumstances present and known to officers at the time. Hubbard's seizure cannot be justified as an investigatory *Terry* stop because police lacked sufficient articulable facts of criminal activity.

<u>**CONCLUSION**</u>

WHEREFORE, for the reasons set forth herein, Defendant Michael Hubbard objects to the recommendations in the Report and Recommendation, Doc. # 54, and prays that the Court grant his Motion to Suppress Evidence.

Respectfully submitted, this 17th day of August, 2020.

<u>**/s/Lawanda N. Hodges**</u>
Lawanda N. Hodges
Georgia Bar No. 547413
The Law Firm of Lawanda Hodges, LLC
1100 Peachtree Street, Suite 200
Atlanta, GA 30309
(404) 474-0772
lhodges@lhodgeslaw.com

*Attorney for Michael Hubbard*

## **CERTIFICATION**

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Civil Rule 5.1B.

> **/s/Lawanda N. Hodges**
> Lawanda N. Hodges
> Georgia Bar No. 547413
> The Law Firm of Lawanda Hodges, LLC
> 1100 Peachtree Street, Suite 200
> Atlanta, GA 30309
> (404) 474-0772
> lhodges@lhodgeslaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 17th day of August 2020, the undersigned electronically filed the foregoing filing using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> Leanne Marek
> Assistant United States Attorney
> US Attorney's Office for the Northern District of Georgia

> **/s/Lawanda N. Hodges**
> Lawanda N. Hodges
> Georgia Bar No. 547413
> The Law Firm of Lawanda Hodges, LLC
> 1100 Peachtree Street, Suite 200
> Atlanta, GA 30309
> (404) 474-0772
> lhodges@lhodgeslaw.com

> *Attorney for Michael Hubbard*