IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America,

v.                                                              Case No. 1:19-cr-00179

Michael Hubbard,                                   Michael L. Brown
                                                                United States District Judge
                Defendant.

_____/

# ORDER

Defendant Michael Hubbard moves to suppress evidence from a search. (Dkt. 33.) The Magistrate Judge recommends denying the motion. (Dkt. 54.) Defendant objects to the Magistrate Judge's Report and Recommendation ("R&R"). (Dkt. 56.) The Court overrules Defendant's objections and adopts the Magistrate Judge's R&R.

## I. Background

At 4:20 a.m., on June 18, 2018, Officer Mogavero received a call to respond to a person down and possibly intoxicated at a gas station. (Dkt. 47 at 4:3–23.) When Officer Mogavero arrived, he saw a car "pretty much halfway between a parking spot and the exit to the gas station parking lot." (*Id.* at 7:17–19.) Officer Mogavero shined his flashlight into the car

and saw Defendant asleep. (*Id.* at 7:5–16.) He also saw a handgun on the passenger seat and a glass drink with a lime in it. (*Id.*) Some of the tires on the car were damaged. (*Id.*) When Officer Mogavero shined his light into the car, Defendant was not responsive. (*Id.* at 10:11–13.) Seeing the gun, Officer Mogavero called for backup and waited. (*Id.* at 10:19–24.) Officer Miller came to assist. (*Id.*)

Officer Mogavero wanted to investigate both Defendant's well-being and potential criminal activity, such as a drunk driving or a hit and run. (*Id.* at 11:17–24.) Officer Mogavero tapped on the window and Defendant woke up. (*Id.* at 11:25–12:8.) Defendant reached for the gun on the passenger seat but put it down when the police officers told him to do so. (*Id.* at 12:9–23.) The officers instructed Defendant to open the car door, and, when he did, Officer Mogavero smelled alcohol. (*Id.* at 12:24–13:12.)

Defendant moved to suppress evidence from the search. (Dkt. 33.) He claims the officers did not have probable cause to order him out of the vehicle. The Magistrate Judge rejected that argument. He found the officers had the right to order Defendant out of the car while investigating why he was asleep in a running car at 4:00 a.m. The

Magistrate Judge reasoned that Officer Mogavero had been called to investigate a potential DUI. While there, once he saw the gun in plain view, the officers could order Defendant out of the car to perform both a wellness check and a *Terry* stop. The Magistrate Judge acknowledged that it is not illegal to sleep in a car but reasoned that it is unusual to sleep in a running car in the middle of the driving area in a gas station. And even if that did not create probable cause, then the facts were enough to generate a reasonable suspicion, which is all that is required for a *Terry* stop.

Defendant objects. He claims the officers had no reason to force Defendant out of his car at gunpoint. He claims Officer Mogavero could not have felt endangered, as required for a wellness check, or have had a reasonable suspicion of criminal activity, as required for a *Terry* stop.

## II.   Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination

of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A district judge should consider those issues to which a party makes specific objections. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

### III. Discussion

A traffic stop is a seizure under the Fourth Amendment. *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). A traffic stop is constitutional if a law enforcement officer has probable cause to believe the driver committed a traffic violation or a reasonable suspicion that an occupant of the car is engaged in criminal activity as required by *Terry v. Ohio*, 392 U.S. 1 (1968). *See Spoerke*, 568 F.3d at 1248. The existence of probable cause or reasonable suspicion is viewed from the standpoint of an objectively reasonable police officer. *See United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003). "[A] court must examine the totality of the circumstances in order to determine whether

4

a search or seizure is reasonable under the Fourth Amendment." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). "Upon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

The Magistrate Judge found the officers had two reasons for asking Defendant to leave the car, a wellness check and reasonable suspicion of DUI. For a wellness check, an officer may conduct a frisk or take limited protective action if the officer reasonably believes himself to be in danger. *United States v. Alexander*, 2018 WL 323945, *1 (S.D. Ga. Jan. 8, 2018) ("[A] protective frisk [ ] can occur when an officer legitimately encounters an individual, whether he is investigating that individual or not, the officer may reasonably believe himself to be in danger and may wish to determine quickly whether that person is armed."). The Magistrate Judge relied on *Alexander*. In that case, police officers saw a car stopped at a stop sign for an unusually long time. *Id*. at *1. The officers approached the passenger side of the car and saw the defendant had a firearm. *Id*. The officers told the defendant to put his hands on the

5

dashboard. The court found those "officers were well within their authority to conduct a wellness check to determine whether the vehicle's occupants were safe." *Id.* at *2. Similarly, here the officers first saw Defendant passed out (or at least nonresponsive) in a car parked askew in a gas station in the middle of the night and then saw Defendant had a gun on the passenger seat next to him. They were within their authority to check on Defendant's safety and wellness and then to remove him from the car to protect themselves while conducting this inquiry, particularly after he first motioned to the gun.

Defendant claims this case differs from *Alexander* because there, the officers were in a high crime area and the defendant denied possession of a visible firearm. That difference does not change the outcome. Given the fact it was 4:20 a.m. and Defendant, who had just been asleep or passed out in a car improperly parked, reached for his gun, Officer Mogavero could have reasonably felt himself in danger. *See United States v. Simmons*, 768 F. App'x 948, 951 (11th Cir. 2019) ("We afford officers great deference in their evaluation of the attendant circumstances threatening their safety on the scene."). He could thus

6

perform a frisk or take limited protective action, such as ordering Defendant out of the car..

Defendant also claims this case differs from *Alexander* because in *Alexander* the officers only told the defendant to put his hands on the dashboard while here the officers told Defendant to leave the car. Defendant claims the Magistrate Judge applied the standard for a frisk when the police officer seized Defendant. Defendant frames the encounter as the officers beginning their interaction with Defendant by ordering him out of the car. In fact, Officer Mogavero testified that he ordered Defendant out of the car after Defendant appeared to reach for a firearm on the passenger seat. At that point, once Defendant reached for the firearm, Officer Mogavero could reasonably tell Defendant to get out of the car. *See Simmons*, 768 F. App'x at 951 (finding a pat-down search reasonable upon a driver's failure to communicate and the officer seeing a potential gun magazine in the suspect's waistband).

The officers also had authority under the Fourth Amendment to perform a *Terry* stop. To perform a *Terry* stop, an officer must have reasonable suspicion that criminal activity is afoot, meaning the officer must have "some minimal level of objective justification" taken from the

7

totality of the circumstances for making the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion is determined from the totality of the circumstances. *Id.* The "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). The Magistrate Judge found the officers had a reasonable suspicion to stop Defendant because Defendant was asleep, in the middle of the driving area of the gas station, with the car running and blown out tires, and a gun on the passenger seat and a glass with clear liquid and a lime. Defendant claims these facts do not suggest reasonable suspicion. The Court disagrees — these facts provide a minimal level of objective justification that Defendant was driving while intoxicated. *See, e.g.*, *United States v. Broadie*, 452 F.3d 875, 878–79 (D.C. Cir. 2006) ("Our inquiry . . . does not deal with hard certainties but with probabilities.").

## IV.  Conclusion

The Court **OVERRULES** Defendant's Objections (Dkt. 56) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 54). The Court **DENIES** Defendant's Motion to Suppress (Dkt. 33).

**SO ORDERED** this 14th day of September, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE