IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL HUBBARD | Criminal Action No.<br><br>1:19-cr-00179-MLB-JSA |

**Government's Response to Defendant's
Post-Hearing Brief in Support of Self-Serving Statement**

The United States of America, by Kurt R. Erskine, Acting United States Attorney, and D'Juan B. Jones and Jessica C. Morris, Assistant United States Attorneys for the Northern District of Georgia, files this Response to Defendant's Post-Hearing Brief in Support of Self-Serving Statement.

**Background**

Officers with the Atlanta Police Department encountered Defendant on June 18, 2018, at approximately 4:24 am. Below is a summary of the relevant events along with corresponding timestamps from Officer Mogavero's body worn camera.

- 1:59 – Officer Mogavero arrived on scene at the BP gas station.
- 6:40 – Officer Mogavero and Officer Miller approached Defendant's car and knocked on the window in order to wake Defendant.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

- 7:30 – After Defendant exited the vehicle and as officers placed Defendant into handcuffs, Defendant stated "what's wrong sir, I ain't doing nothing, you know me" approximately 3 times.
- 8:15 – As Officer Mogavero checked Defendant's person for weapons while they stood next to the patrol vehicle, Defendant stated "I was going to my house, I ain't going nowhere."
- 8:23 – During the weapons check, Defendant stated "I didn't pull nothing sir, you know me, you seen me before, I ain't doing nothing."
- 8:34 – Defendant stated that his identification was in his vehicle. Immediately after saying this, Defendant attempted to flee on foot.
- 10:11 – Additional marked APD vehicles arrived while Defendant was seated in Officer Mogavero's vehicle.
- 13:08 – Defendant stated to Officer Mogavero that he does not have identification, despite minutes earlier telling the officer it was inside his vehicle.
- 13:19 – Defendant stated to Officer Mogavero that his girlfriend, Ashley Douglas, was the owner of the car.
- 13:42 – Defendant stated to Officer Mogavero that his name was "Michael Douglas"[1] and confirmed it when the officer asked if he had the same last name as Ashley Douglas.

---

[1] Defendant's last name is Hubbard.

- 15:13 – Officer Mogavero approached Defendant again and asked him to confirm that his name is "Michael Douglas." Defendant confirmed.
- 16:00 – Defendant asked Officer Mogavero what occurred.
- 16:35 – At the end of Officer Mogavero's explanation, Defendant stated, "I reached for a gun?"[2]
- 17:14 – Defendant stated to officers that he does not have a middle name.
- 24:30 – Officer Mogavero read Defendant the Georgia implied consent warning regarding drug and alcohol testing. Defendant gave his verbal consent.
- 36:21 – Lieutenant Cotter parroted Defendant, stating "he is saying he didn't know there was a gun in the car" to the officers on scene.
- 43:50 – Defendant stated to Lieutenant Cotter that he was not a convicted felon.

## Discussion

Defendant seeks admission of his self-serving hearsay during trial. (Doc. 106.) Defendant argues that his statements are admissible because they are present sense impressions, excited utterances, explain his state-of-mind, and constitute party-opponent declarations. But as detailed below, each argument fails.

---

[2] This statement appeared to be a question given Defendant's tone. A question constitutes hearsay "where the declarant intends the question to communicate an implied assertion and the proponent offers it for this intended message." *United States v. Torres*, 794 F.3d 1053, 1059–61 (9th Cir. 2015).

1. **The present sense impression and excited utterance exceptions do not apply.**

Defendant contends that his self-serving statements are admissible as present sense impressions and excited utterances. Under F.R.E. 803(1), a present sense impression is defined as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Under F.R.E. 803(2), an excited utterance is defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."

This Circuit recently provided district courts with a roadmap for assessing the application of these exceptions. In *United States v. Bates*, law enforcement rammed the defendant's door during the execution of a search warrant. 960 F.3d 1278, 1284 (11th Cir. 2020). The defendant fired two gunshots through his door at law enforcement, striking one officer in the leg. *Id*. During the heat of the encounter, Defendant called a 9-1-1 operator and stated, "the police at my door" and to "please tell 'em don't shoot me." *Id*. The defendant also said, "I thought it was somebody trying to come in," and "I hope I ain't shot people." *Id*. The defendant eventually opened the front door and was taken into custody. *Id*. When an ATF agent escorted the defendant to a patrol car, he told an agent that "he did not know the police were at his door and that he thought he was being robbed." *Id*.

At trial, the defendant acknowledged that his custodial statement to the ATF agent was hearsay but contended that the statement was admissible under the excited utterance and present sense impression exceptions. *Id*. at 1291. This Circuit rejected the argument. In so doing, this Circuit held that the statement did not qualify as either exception, explaining:

> [The defendant's] statement does not qualify as an excited utterance because he was not "under the stress of excitement" when he made the statement. Specifically, while [the defendant] was clearly in an excited state during the 9-1-1 call, he made no similar statement while speaking with the 9-1-1 operator, while being arrested, while being calmed down after being arrested, or while being escorted to the patrol car. By the time [the defendant] reached the patrol car and made this statement, it is improbable that, as [the defendant] argued at trial, the "physical altercation as he's being arrested is what led to this statement." Similarly, the statement was not a present sense impression because it was not "made while or immediately after [the defendant] perceived" the event. While the statements he made on the 9-1-1 call were "made while or immediately after [the defendant] perceived" the event, the later statement to [the ATF agent] is simply too far removed to be a present sense impression.

*Id*.

The Sixth Circuit reached the same decision on similar facts in *United States v. Penney*. There, the defendant stated to an agent, after his arrest, that "you guys don't understand, I thought I was being robbed." 576 F.3d 297, 313 (6th Cir. 2009). The defendant sought the introduction of the statement at trial pursuant to the excited utterance and present sense impression exceptions. *Id*. In rejecting

the defendant's argument regarding the excited utterance exception, the circuit explained that the statement had to be "made before there is time to contrive or misrepresent." *Id*.  This element proved fatal to the defendant's assertion because he made the statement "ten to fifteen minutes after the confrontation [with] law enforcement was over, and after EMT vehicles arrived at the scene with sirens blaring."  *Id*.  The Sixth Circuit rejected the defendant's present sense impression argument for similar reasons, that is, because his statement was not made "while the declarant was perceiving the event or condition, or immediately thereafter."  *Id*. at 314.

The Ninth Circuit reached the same conclusion in *United States v. Canales-Fuentes*.  There, the circuit held that the defendant's custodial statements did not constitute a present sense impression "because they did not describe or explain an event, but rather provided an excuse for his lack of knowledge and an alibi for his trip to the United States."  176 F. App'x 873, 875 (9th Cir. 2006).  The circuit also determined that the custodial statements were not excited utterances "because [the defendant] was not under the 'stress of excitement' caused by a startling event when he made them.  [The defendant] had time to reflect before he spoke; he was described by the investigating officer as calm and cooperative; and the only stress he was under was that inherent in police interrogation."  *Id*.

The holdings of the aforementioned circuits all apply to the facts in this case.  Here, the triggering event was the encounter with Officers Mogavero and Miller.  Indeed, the officers woke up Defendant, gave loud verbal commands, and pulled

their service weapons during the encounter with Defendant.  Defendant made his self-serving statements after the triggering event concluded.  Defendant made his first self-serving statement (8:23: "I didn't pull nothing sir")[3] after he was already handcuffed by officers and being patted down for weapons, just before Defendant attempted to flee from officers.  Defendant made his second self-serving statement approximately 10 minutes after the triggering event as he sat in a patrol vehicle (16:35: "I reached for a gun?").  And, Defendant made his third self-serving statement, which was the main focus of Defendant's post-hearing brief, approximately 30 minutes after the triggering event to Lieutenant Cotter (36:21: Lt. Cotter repeated Defendant's statement that Defendant "didn't know there was a gun in the car.")

Just like *Bates*, *Penney*, and *Canales-Fuentes*, these statements occurred well-after the triggering event.  By the time Defendant made these statements, he was not "under the stress of excitement," nor were they made "while or immediately after [Defendant] perceived" the event.  Viewing the facts from a different perspective, if Defendant made these statements while officers had their weapons drawn, were commanding him to exit the car, and physically removed him from the car, then the statements could possibly be present sense impressions or excited utterances as they would be akin to the 9-1-1 call in *Bates*.

---

[3] This statement is captured on the video clips that the parties have agreed upon and that will be introduced by the Government during its case-in-chief.

Indeed, one can imagine Defendant exclaiming "I don't have a gun" or "I'm not reaching for a gun" as officers drew their weapons at him and commanded him to put the firearm down. But that wasn't the case here. Instead, just like all the defendants in the aforementioned circuit holdings, Defendant made his statements after he was in custody and/or placed in a patrol car, several minutes after the triggering event. By this time, Defendant's confrontation with the officers was over, he had cooled down from the stress of the triggering event, and he had the opportunity to "contrive or mispresent" the circumstances of the triggering event—that is, that he did not have or know there was a firearm. As the *Canales-Fuentes* held, the only stress the defendant was under at the time he gave the statements was that which is "inherent in police interrogation." 176 F. App'x at 875. Moreover, Defendant's statements do not actually explain or describe the triggering event. Rather, his statements merely provide an excuse for his conduct, which places the statements outside the realm of the present sense impression exception. *See id*.

Furthermore, the unreliability of Defendant's statements presents a glaring roadblock to admissibility. As stated in the Notes of Advisory Committee on Proposed Rules to F.R.E. 803, "[t]he present rule proceeds upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available." *See also Brown v. Keane*, 355 F.3d 82, 89–90 (2d Cir. 2004) (explaining that the hearsay exceptions are

founded on the principle that statements "made in a moment of excitement [,] without the opportunity to reflect on the consequences of one's exclamation," are "thought to be reliable because the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication"). But no such guarantee of reliability or trustworthiness exists when a defendant makes statements while in police custody after the triggering event has concluded. For example, in *United States v. Elem*, a defendant made exculpatory statements "after he was in custody and was the focus of a criminal investigation." 845 F.2d 170, 174 (8th Cir. 1988). Just like this case, the defendant's statements in *Elem* were "given in answer to questions asked of him by the officers." *Id*. The Eighth Circuit determined that the statements did not meet the requirements of the excited utterance exception because "under these circumstances [the defendant] would have every motive to fabricate a statement after some reflection in an attempt to extricate himself." *Id*; *see also United States v. Perez*, 106 F. App'x 597, 598 (9th Cir. 2004) (holding that a defendant's "calculated, exculpatory statement" could not be considered a present sense impression).

    The same reasoning applies here. As conceded by Defendant, he made all of his statements while in police custody. (Doc. 106 at 2) ("[I]t is undisputed that Mr. Hubbard's statement was made (1) while he was still on the scene, (2) while he was in handcuffs, and (3) while law enforcement was talking to him."). While being handcuffed and while sitting in the back of a patrol vehicle, Defendant had every reason to "attempt to extricate himself" by making self-serving statements,

thus rendering those statements unreliable. And, should there be any doubt about Defendant's trustworthiness, he repeated several untruths in the same breath as his self-serving statements. That is, he repeatedly stated to the officers that they knew one another, he repeatedly gave the officers a false name, he falsely stated he had identification inside the vehicle, he falsely stated he was not a felon, he attempted to flee the scene, and he denied attempting to flee the scene when asked by Lieutenant Cotter (1:34 of Lt. Cotter body worn camera).

**2. The state-of-mind hearsay exception does not apply.**

Defendant also argues that his self-serving statements are admissible under the state-of-mind hearsay exception. F.R.E. 803(3) provides that "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." This principle was first articulated nearly 100 years ago by the Supreme Court. In *Shepard v. United States*, the Court explained that "[d]eclarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored." 290 U.S. 96, 105–06 (1933). In other words, in order to be admissible under this Rule, the declaration must convey statements that "face

forward, rather than backward." *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984); *see also Smith v. United States*, 385 F.2d 252, 254 (8th Cir.1967) ("Statements relating to the 'state of mind' of a person are seldom admissible where they 'face backward' to past occurrences.").

It follows that the state-of-mind exception is not intended to be used to show or excuse earlier conduct. *See United States v. Harwood*, 998 F.2d 91, 97–98 (2d Cir. 1993) (explaining that a statement "must face forward, rather than backward" and the defendant's statement was not offered to prove state of mind but to show earlier conduct); *United States v. Hayat*, 710 F.3d 875, 895 (9th Cir. 2013) ("The statement 'I never intended on going to a camp' is backward-looking, expressing [the defendant's] memory of his earlier states of mind, and so is not admissible under Rule 803(3)."). Defendant's statements are in line with these impermissible declarations. Defendant's self-serving statements that he did not reach for a gun, pull a gun, and did not know a gun was in the car are all backward looking statements regarding his memory and to show/excuse his earlier conduct. Moreover, as articulated by the Ninth Circuit, statements remain hearsay "when the statements are offered to prove the truth of the fact underlying the memory or belief." *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013). Defendant's statements are sought to be introduced for that impermissible purpose—to prove the truth of his underlying memory or belief that he did not knowingly possess a firearm.

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181
11

3. **The party-opponent hearsay exception does not apply.**

Defendant contends that he should be able to introduce his own self-serving statement through the cross-examination of the Government's law enforcement witnesses under the party-opponent hearsay exception. (Doc. 106 at 2.) While Defendant is correct that out-of-court statements made by a party-opponent are a recognized exception to hearsay, his application of the principle to the instant facts is misguided. That is, the party-opponent exception "does not [] extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses" in criminal prosecutions. *United States v. Ford*, 761 F.3d 641, 651 (6th Cir. 2014); *see also United States v. Smith*, 259 F. App'x 955, 956 (9th Cir. 2007) ("[S]elf-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay, but ... non-self-inculpatory statements are inadmissible hearsay.")

For example, in *Ford*, when examining an FBI agent during trial, the defendant "attempted to elicit testimony regarding his exculpatory out-of-court statements, but the district court sustained the government's objections to these questions on the basis of hearsay." *Id*. The Sixth Circuit upheld the district court's ruling, explaining that a defendant's "right to cross-examine the state's witnesses" was not absolute, and the district court's decision to preclude the defendant from eliciting inadmissible hearsay did not violate the confrontation clause." *Id*. at 652. Moreover, because the statements were inadmissible hearsay, the circuit explained that the district court did not abuse its discretion under the

rule of completeness by limiting the FBI's cross-examination because the rule was "not designed to make something admissible that should be excluded." *Id*.

While the Government was unable to locate an Eleventh Circuit opinion on the subject, countless courts across the country have made it clear that the party-opponent hearsay exception does not apply on these facts. *See, e.g.*, *United States v. Mitchell*, 502 F.3d 931, 964–65 (9th Cir. 2007) (holding that the district court did not err in prohibiting the defendant from eliciting exculpatory statements he made during interviews during cross-examination of law enforcement witness); *United States v. Perez*, 106 F. App'x 597, 598 (9th Cir. 2004) (holding that the district court did not err in excluding the defendant's "self-serving statement," described by the court as "calculated" and "exculpatory," where the defendant made the statement to a police officer "at or about the time of his arrest"); *United States v. Chard*, 115 F.3d 631, 634–35 (8th Cir. 1997) (holding that testimony that the defendant sought to elicit from law enforcement officer, which focused on repeating exculpatory statements that the defendant made to the agent before trial, was inadmissible); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party. Fed.R.Evid. 801(d)(2). Thus, during direct examination, the government could have introduced inculpatory statements made by [the defendant]. The rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."); *United States v. Udey*, 748 F.2d 1231, 1243 (8th

Cir. 1984) (holding that the district court properly prohibited the defendant from calling law enforcement officers to the stand to testify as to certain exculpatory comments the defendant made to the officers after arrest); *United States v. Bumagin*, 136 F. Supp. 3d 361, 374–75 (E.D.N.Y. 2015) ("Defendant is precluded from cross-examining the Government's witnesses in an effort to elicit exculpatory statements made by Defendant because such statements are inadmissible hearsay."); *United States v. Black*, No. 13-CR-316 DLI, 2014 WL 5783067, at *3 (E.D.N.Y. Nov. 5, 2014) (holding that the defendant was precluded from introducing self-serving, exculpatory statements he made to law enforcement officers, whether through cross-examination or as direct evidence).

As such, Defendant's statements remain inadmissible hearsay.

## Conclusion

For the reasons stated herein, Defendant should be prohibited from introducing his self-serving hearsay during trial because no hearsay exceptions apply.

Respectfully submitted,

Kurt R. Erskine
*Acting United States Attorney*

/s/D'Juan B. Jones
*Assistant United States Attorney*

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

        Georgia Bar No. 857445
        Djuan.Jones@usdoj.gov

/s/JESSICA C. MORRIS
    *Assistant United States Attorney*
    Georgia Bar No. 100907
    Jessica.morris3@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Lawanda Hodges. Esq.

August 30, 2021

/s/ D'JUAN JONES

D'Juan Jones

*Assistant United States Attorney*